IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOHN DOHERTY,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )   Civ. No. 04-370-SLR
                                       )
STATE OF DELAWARE, DEPARTMENT OF       )
CORRECTION, NOREEN RENARD, JOSEPH      )
PAESANI, JAMES LUPINETTI, MICHAEL      )
TIGUE, and ROBERT I. GEORGE, JR.,      )
                                       )
          Defendants.                  )

---

Richard R. Wier, Jr., Esquire and Daniel W. Scialpi, Esquire of
Richard R. Wier, Jr., P.A., Wilmington, Delaware.  Counsel for
Plaintiff.

Marc P. Niedzielski, Deputy Attorney General, State of Delaware
Department of Justice, Wilmington, Delaware.  Counsel for
Defendants.

---

**MEMORANDUM OPINION**

Dated: March 30, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I.  INTRODUCTION

On June 10, 2004, plaintiff John Doherty filed this action against defendants State of Delaware, Delaware Department of Correction;  Noreen Renard, the Chief of the Bureau of Community Corrections of the Department of Correction, in her official and individual capacity; Joseph Paesani, Deputy Principal Assistant to Chief Renard, in his official and individual capacity; Internal Affairs officers James Lupinetti and Michael Tigue, in their official and individual capacities; and Robert I. George, Warden of the Sussex Community Corrections Center, in his official and individual capacities.[1]  Plaintiff alleges violations of 42 U.S.C. §§ 1983, 1985, 11 Del Code §§ 9200 et seq., the Fourteenth Amendment of the United States Constitution, and Delaware common law.  (D.I. 1)  Plaintiff asserts that this court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.  Currently before the court is defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.I. 10)  For the following reasons, defendants' motion to dismiss is granted in part and denied in

---

[1] The court has used the titles and positions held by the individual defendants at the time of the incident alleged in the complaint.

2

part.

## II.  BACKGROUND

The following recitation of events is based upon the allegations set forth in plaintiff's complaint.  All of plaintiff's claims arise out of the investigation and disciplinary process to which he was subject after Department of Correction ("DOC") personnel claimed plaintiff engaged in inappropriate behavior with an inmate at the DOC.  Plaintiff was Operations Manager of the DOC with a Grade 17, non-union position.  On June 17, 2002, plaintiff was notified by defendant Renard that he was under investigation for alleged inappropriate supervision and contact with an offender, Jeremy Kokotaylo. (D.I. 1, ¶ 12)  Pursuant to this investigation, plaintiff was directed to report to the DOC Internal Affairs Unit office to answer questions posed by defendants Lupinetti and Tigue of the Internal Affairs Unit.  (D.I. 1, ¶ 13)  During this first investigatory meeting on June 10, 2002, plaintiff alleges that he was only advised of an investigation into his alleged violation of Section 16 of the Delaware Corrections Code of Conduct for inappropriate supervision and contact with Jeremy Kokotaylo. (D.I. 1, ¶ 13)  A secondary questioning of plaintiff by defendant Warden George occurred on August 7, 2002, in the Day Reporting Center at Dover Probation and Parole.  (D.I. 1, ¶ 14)

A hearing, conducted by defendant Paesani, was held in the

3

matter on September 17, 2002.  (D.I. 1, ¶ 15)  Plaintiff contends

that he repeatedly made objections and complaints that alluded to

his rights and protections afforded him by Delaware and Federal

law.  (D.I. 1, ¶ 17)  On December 16, 2002, plaintiff was found

to have violated Sections 15 and 23 of the Delaware DOC Code of

Conduct.  (D.I. 1, ¶ 16)  As a result of the DOC's findings,

plaintiff was reassigned from his current position as Operations

Manager, Grade 17, to Senior Probation and Parole Officer, Grade

13, effective January 15, 2003.  (D.I. 1, ¶ 17)

     In his complaint, plaintiff sets forth three federal causes

of action and three causes of action based on Delaware law.

First, plaintiff contends that defendants violated his

constitutional rights to Due Process under the Fourteenth

Amendment of the United States Constitution.  (D.I. 1, ¶ 22)

Second, plaintiff contends that defendants, in their official and

individual capacities, violated 42 U.S.C. § 1983 while acting

under color of state law.  (D.I. 1, ¶ 24)  Third, plaintiff

alleges that defendants conspired to deprive plaintiff of his

protections under the law in violation of 42 U.S.C. § 1985(3).

Fourth, plaintiff contends that defendants violated 11 Del. C. §§

9200 and 9202-9205 ("the Law Enforcement Officers' Bill of

Rights" or "LEOBOR").  Specifically, plaintiff alleges that:  (1)

defendants Lupinetti, Tigue, and George violated § 9200(c)(2) by

interrogating plaintiff at unlawful locations; (2) defendants

4

Lupinetti, Tigue, and George violated § 9200(c)(4) by not informing plaintiff of the full nature of the investigation prior to being questioned; (3) defendants Lupinetti and Tigue violated § 9202 by obtaining personal financial records of plaintiff and by relying on the personal financial records illegally obtained; and (4) defendants Renard and Paesani violated §§ 9203, 9204, and 9205 by, inter alia, denying plaintiff a proper hearing before a tribunal of impartial decision makers. (D.I. 1, ¶ 20) Plaintiff further alleges that defendants intentionally inflicted emotional distress. (D.I. 1, ¶ 26) Finally, plaintiff contends that defendants, in breaching an implied covenant of good faith and fair dealing, "engaged in fraud, deceit, and/or misrepresentation" which resulted in plaintiff's demotion to a "lessor position with a lower pay grade" and "reassign[ment] to a different work location." (D.I. 1, ¶ 30-31) Plaintiff seeks compensatory damages, punitive damages, reinstatement to his previous position, and attorneys' fees. (D.I. 1, ¶ 31)

Defendants counter plaintiff's allegations by filing this present motion, arguing that: (1) the Eleventh Amendment divests this court of subject matter jurisdiction over claims seeking damages against the State of Delaware, Department of Correction, and its employees in their official capacities; (2) the complaint fails to state a legal claim under either §§ 1983 or 1985; (3) plaintiff's claim of intentional infliction of emotional distress

5

is undercut by his own complaint;  and (4)  plaintiff's complaint

is not sufficiently pled with particularity with respect to the

breach of implied covenant of good faith claim.  (D.I. 11)

Lastly, defendants contend, via plaintiff's response to the

instant motion, that plaintiff no longer makes any claims under

LEOBOR.  (D.I. 13)

**III.  STANDARD OF REVIEW**

**A.  Failure to State a Claim**[2]

In analyzing a motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6), the court must accept as true all material

allegations of the complaint and it must construe the complaint

in favor of the plaintiff.  See Trump Hotels & Casino Resorts,

Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).

"A complaint should be dismissed only if, after accepting as true

all of the facts alleged in the complaint, and drawing all

reasonable inferences in the plaintiff's favor, no relief could

be granted under any set of facts consistent with the allegations

of the complaint."  Id.  Claims may be dismissed pursuant to a

Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any

set of facts that would entitle him to relief.  See Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  The moving party has the

---

[2]Although defendants submitted an affidavit to support their
contention that they have not waived Eleventh Amendment immunity
(D.I. 14), the court will not review this motion under Fed. R.
Civ. P. 56.

burden of persuasion. <u>See</u> <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F2d 1406, 1409 (3d Cir. 1991).

### B.  Lack of Subject Matter Jurisdiction

The lack of subject matter jurisdiction can be raised at any time and cannot be waived.  Indeed, the court is obliged to address the issue on its own motion. <u>See</u> <u>Moodie v. Fed. Reserve Bank</u>, 58 F.3d 879, 882 (2d Cir. 1995).  Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. <u>See</u> <u>Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.</u>, 227 F.3d 62, 69 (3d Cir. 2000).

Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). <u>See</u> 2 James W. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 1997).  Under a facial challenge to jurisdiction, the court must accept as true the allegations contained in the complaint. <u>See</u> <u>id.</u>  Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1408-1409 (3d Cir. 1991) (quoting <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946)).

Under a factual attack, however, the court is not "confine[d] to allegations in the . . . complaint, but [can]

7

consider affidavits, depositions, and testimony to resolve
factual issues bearing on jurisdiction." Gotha v. United States,
115 F.3d 176, 179 (3d Cir. 1997). See also Mortensen v. First
Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891-892 (3d Cir. 1977).  In
such a situation, "no presumptive truthfulness attaches to
plaintiff's allegations, and the existence of disputed material
facts will not preclude the trial court from evaluating for
itself the merits of jurisdictional claims." Carpet Group, 227
F.3d at 69 (quoting Mortensen, 549 F.2d at 891).  Although the
court should determine subject matter jurisdiction at the outset
of a case, "the truth of jurisdictional allegations need not
always be determined with finality at the threshold of
litigation."  Moore at § 12.30[1].  Rather, a party may first
establish jurisdiction "by means of a nonfrivolous assertion of
jurisdictional elements and any litigation of a contested
subject-matter jurisdictional fact issue occurs in comparatively
summary procedure before a judge alone (as distinct from
litigation of the same fact issue as an element of the cause of
action, if the claim survives the jurisdictional objection)."
Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513
U.S. 527, 537-38 (1995) (citations omitted).

## IV.  DISCUSSION

### A.  Procedural Due Process

All of plaintiff's federal claims rest on his assertion that

he was deprived of various property interests associated with his employment without the procedural due process required by the Fourteenth Amendment.

The Supreme Court has held that, in order to prevail on a Fourteenth Amendment due process claim, a plaintiff must show that defendants deprived him of liberty or property. See Board of Regents v. Roth, 408 U.S. 564, 576 (1972). Thus, before reaching the question of whether the various state actors violated plaintiff's Fourteenth Amendment due process rights, the court must resolve the threshold question of whether plaintiff had a protected property interest in continued employment with the DOC. See New Castle-Gunning Bedford Educ. Ass'n v. Board of Educ., 421 F. Supp. 960, 963 (D. Del. 1976).

The Supreme Court has determined that a public employee has a protected property interest in his continued employment by the government. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-548 (1985). To have a protectible property interest, a person must have a "legitimate claim of entitlement to it." Roth, 408 U.S. at 577. Legitimate claims of entitlement to "property" are not created by the Constitution; rather, they are created by state laws that "secure certain benefits and that support claims of entitlement to those benefits." Id.; see also Bishop v. Wood, 426 U.S. 341, 344 (1976).

The Supreme Court has "not had occasion to decide whether

9

the protections of the Due Process Clause extend to discipline of tenured public employees short of termination." Gilbert v. Homar, 520 U.S. 924, 929 (1997). Plaintiff has not cited any case that provides federal due process protections to "demotions" that do not result in loss of pay or other benefits. Therefore, a threshhold question is whether plaintiff suffered a loss of pay or other benefits in connection with his demotion.[3] In the case at bar, no discovery has been conducted as yet. Plaintiff alleges in his complaint that his demotion resulted in his having a "lower pay grade"; defendants argue that, despite his demotion, plaintiff continues to receive the same pay and benefits as he did as Operations Manager. The court will deny the motion to dismiss and allow limited discovery as to this issue.

**B. Section 1983 Claim**

Section 1983[4] imposes liability on any person who, under

---

[3]Plaintiff appears to argue that he had a property interest in a more fair investigatory process. Process, however, is not an end in itself. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983). "Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Id. The Supreme Court has noted that, in the absence of a substantive interest, the expectation of a certain kind of process is not an independent constitutionally protected interest. See id. at 250-51 & n.12; see also United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981). Therefore, plaintiff cannot premise a due process claim solely upon the investigatory procedures that ultimately resulted in the employment action taken against him.

[4]Section 1983 provides:

Every person who, under color of any statute, ordinance,

color of state law, deprives another of any rights secured by the
Constitution or the laws of the United States.  See 42 U.S.C. §
1983.  To establish a § 1983 violation, a plaintiff must
"demonstrate a violation of a right protected by the Constitution
. . . that was committed by a person acting under the color of
state law."  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).
In his complaint, plaintiff alleges that defendants deprived him
of his "rights secured by the Constitution, while acting under
color of state law."  (D.I. 1 at ¶ 24)  He also claims that
defendants deprived him of his constitutional right to due
process because "the hearing . . . used illegally obtained
evidence and [was] conducted by a biased decision maker,
defendant Joseph Paesani."  (D.I. 12 at 5)

     As an initial matter, the Eleventh Amendment bars § 1983
claims against State officials sued in their official capacities.
See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).
With respect to the State defendants, plaintiff seeks money
damages against the State, the State Capitol Police, and certain

------

     regulation, custom, or usage, of any State or Territory or
     the District of Columbia, subjects, or causes to be
     subjected, any citizen of the United States or other person
     within the jurisdiction thereof to the deprivation of any
     rights, privileges, or immunities secured by the
     Constitution and laws, shall be liable to the party injured
     in an action at law, suit in equity, or other proper
     proceeding for redress . . . .

42 U.S.C. § 1983 (2004).

State officials in their official capacities.  Where a plaintiff sues a State or State agency for money damages, Eleventh Amendment immunity will bar the action.  See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).  Similarly, where a suit names a State official in his official capacity, the State is the real party in interest and, as a consequence, the Eleventh Amendment immunity applies.  See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).  In addition, a State agency is not a "person" subject to claims under 42 U.S.C. § 1983.  See Will, 491 U.S. at 71.  While Congress, pursuant to its remedial powers under § 5 of the Fourteenth Amendment, may abrogate a State's Eleventh Amendment immunity, it must clearly state its intent to do so.  See Seminole Tribev. Florida, 517 U.S. 44, 55 (1996).  Section 1983 does not contain an express congressional intent to abrogate the Eleventh Amendment.  See Edelman, 415 U.S. at 677.  Moreover, it is clear that the State of Delaware has not waived its sovereign immunity.[5]  Plaintiff's claim for money damages against the State of Delaware, the State Department of Correction, and the named State officers is barred.  Consequently, plaintiff's § 1983 claims against defendants in their official capacities are

---

[5]It is of no help to plaintiff that Delaware State courts have held that an authority to enter into contracts, including employment contracts, is a pro tanto waiver of State sovereign immunity.  (D.I. 12 at 9)  The possible waiver of State sovereign immunity with regard to contractual remedies has no bearing on the propriety of bringing a § 1983 claim against the State of Delaware in federal court.

dismissed.

    To the extent that plaintiff is suing defendants in their
individual capacities, the record needs to be supplemented as
discussed above.  The motion to dismiss, therefore, is denied.

### C.  Section 1985 Claim

    Section 1985 was enacted to combat conspiracies motivated by
racial or class-based discrimination.  To state a claim under 42
U.S.C. § 1985(3), a plaintiff must allege:  (1) a conspiracy; (2)
that the conspiracy is motivated by a racial or class based
discriminatory animus designed to deprive, directly or
indirectly, any person or class of persons to the equal
protection of the laws; (3) an act in furtherance of the
conspiracy; and (4) an injury to person or property or the
deprivation of any right or privilege of a citizen of the United
States.  See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).
In the case at bar, plaintiff fails to even allege any racial or
class-based animus by defendants.  (D.I. 1 at ¶¶ 27, 28; D.I. 12
at 8)  Therefore, plaintiff's claim under § 1985 must be
dismissed.

### D.  Plaintiff's State Law Claims

    Plaintiff's remaining claims for intentional infliction of
emotional distress and breach of implied covenant of good faith
and fair dealing are grounded in state law.  According to 28
U.S.C. § 1367(a),

13

> [i]n any civil action of which the district courts have
> original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original
> jurisdiction that they form part of the same case or
> controversy under Article III of the United States
> Constitution.

As a result, this court is permitted to exercise supplemental

jurisdiction over plaintiff's state law claims.  However, 28

U.S.C. § 1367(c) states:

> The district courts may decline to exercise supplemental
> jurisdiction over a claim under subsection (a) if –
> (1)  the claim raises a novel or complex issue of State law,
> (2)  the claim substantially predominates over the claim or
>      claims over which the district court has original
>      jurisdiction,
> (3)  the district court has dismissed all claims over which
>      it has original jurisdiction, or
> (4)  in exceptional circumstances, there are other
>      compelling reasons for declining jurisdiction.

Although the court will not entertain these state law claims

until it is determined, through discovery, whether plaintiff has

a protectible property interest under the Fourteenth Amendment,

nevertheless, the motion to dismiss is denied.

**V.  CONCLUSION**

For the reasons set forth above, the court grants

defendants' motion to dismiss plaintiff's § 1985 claim, but

denies the remainder of defendants' motion to dismiss.  An

appropriate order shall issue.