IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN DOHERTY                                    :
                                                :
         v.                                     :         C.A. No. 04-370 SLR
                                                :
STATE OF DELAWARE,                              :         TRIAL BY JURY DEMANDED
DEPARTMENT OF CORRECTIONS,                      :
NOREEN RENARD, JOSEPH PAESANI,                  :
JAMES LUPINETTI, MICHAEL TIGUE                  :
ROBERT I. GEORGE, JR., each in                  :
their individual and official capacities.       :
                                                :
         Defendants.                            :

## PLAINTIFF'S ANSWERING BRIEF

## IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
RICHARD R. WIER, JR., PA.
1220 Market St., Suite 600
Wilmington, DE 19801
(302)888-3222

# TABLE OF CONTENTS

TABLE OF CITATIONS .................................................. ii

NATURE AND STAGE OF PROCEEDING ..................................... 1

SUMMARY OF ARGUMENT ................................................ 2

STATEMENT OF FACTS ................................................. 3

ARGUMENT ........................................................... 8

Standard of Review ................................................. 8

I.  PLAINTIFF HAS CLEARLY ESTABLISHED THAT HE HAS SUFFERED A
    PROTECTED PROPERTY INTEREST. ................................... 8

    A.  PLAINTIFF'S ILLEGAL DEMOTION RESULTED IN A LOSS OF PAY AND
        OTHER ADVERSE ECONOMIC REPERCUSSIONS. ...................... 8

        1.  Mr. Doherty is unable to move up along the pay scale detrimentally
            affecting his current and future salary, and his pension salary. .......... 8

        2.  Mr. Doherty has suffered additional financial loss. ................. 9

            a.  Mr. Doherty is forced to pay a monthly service fee or dues. ...... 9

            b.  Mr. Doherty is forced to incur un-reimbursed, work related parking
                expenses ................................................ 9

            c.  Mr. Doherty is unable to obtain over-time pay. ............... 10

    B.  IN ADDITION TO HIS FINANCIAL LOSSES, PLAINTIFF HAS LOST OTHER
        PROTECTED PROPERTY RIGHTS .................................. 10

II. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY SINCE
    THEY WERE AWARE THAT THEY WERE VIOLATING A CLEARLY
    ESTABLISHED CONSTITUTIONAL RIGHT OF MR. DOHERTY .............. 13

CONCLUSION ........................................................ 15

## TABLE OF CITATIONS

Anderson v. Liberty Lobby, 477 U.S. 242, 106 S. Ct. 2505 (1986) .................... 8

Barber v. City of Lewes, 1997 Del. Super. LEXIS 73 (Del. Super. 1997). ............ 11, 13

Homar v. Gilbert, 89 F.3d 1009 (3d Cir. 1995) overruled on other grounds, Gilbert v. Homar,

    520 U.S. 924 (1997) ....................................... 10, 11, 13

Horowitz v. Fed. Kemper Lifer Assurance Co., 57 F.3d 300 (3d Cir. 1995) ............ 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ............. 8

## **NATURE AND STAGE OF THE PROCEEDINGS**

This action was filed on June 10, 2004. On August 2, 2004, Defendants filed a motion to dismiss. On March 30, 2005, this Court entered a memorandum Opinion and Order denying the State's motion to dismiss Mr. Doherty's Fourteenth Amendment claim and Section 1983 claim against the individually named Defendants, and deferred addressing Mr. Doherty's state law claims. This Court provided the parties until June 30, 2005 to conduct discovery as to the effect of Mr. Doherty's demotion on him. On April 12, 2005, Defendants filed requests for admissions, which contained five statements. Due to a technical problem, Plaintiff was unaware of the filing of the requests for admission, until the filing of Defendants' motion for summary judgment. Despite, multiple communications in the interim, Defendants failed to make any effort to follow-up on the requests with counsel. On June 21, 2005, Mr. Doherty was deposed by Defendants. Defendants have not yet filed an Answer or Defenses to the Complaint.

On July 26, 2005, Defendants filed a motion for summary judgment and accompanying brief.

This is Plaintiff's answering brief in opposition to Defendants' motion for summary judgment.

## SUMMARY OF ARGUMENT

1.  The loss of salary or other benefits from public employment is protected by the Due Process Clause.

2.  The loss of salary or other benefits are not the only protected property interest in employment.

3.  Individuals are not entitled to qualified immunity when they violate a clearly established constitutional violation.

## STATEMENT OF FACTS

John "Doc" Doherty has been a law enforcement officer in Delaware for 38 years. (Doherty p. 31). He retired from the Wilmington City Police Department as an inspector, second-in-command. (Doherty p. 31-32). He held positions of trust in the criminal investigation division for 14 years. (Doherty p. 32). At one time he was the commanding officer of the Attorney General's special investigation unit. (Doherty p. 32). He commanded the patrol division and as chief of staff inspections and was responsible for all internal investigation and internal discipline within the police department. (Doherty p. 32). For almost a quarter of a Century, Mr. Doherty was an instructor at the University of Delaware where he taught police science, homicide investigation, and a number of separate classes, including education and training in law enforcement until 1996. (Doherty p. 32). He has lectured at police academies and universities throughout the country and has a very significant reputation in the criminal justice community. (Doherty p. 32).

After retiring from the Wilmington Police Force, he worked for the United States Marshall's Service in Federal Court security. (Doherty p. 33). Mr. Doherty was attending graduate school at the same time. (Doherty p. 33). Mr. Doherty then took a position in the Delaware Department of Corrections, Probation and Parole to help establish policies, procedures, and training programs. (Doherty p. 33). Mr. Doherty was sent by the State to Harrisburg, Pennsylvania, where he attended and graduated from the Pennsylvania Probation and Parole Academy. (Doherty p. 33). Thereafter, he immediately developed and designed the basic officer's training program for the Delaware Probation and Parole Officers, which program is still being used today. (Doherty p. 33). He also designed the firearms training program, which was

used for about eight years. (Doherty p. 34).

Until his demotion by Defendants in January 2003, Mr. Doherty was Operations Manger for the Bureau of Community Corrections, Department of Corrections. (Doherty p. 4). As an Operations Manger, Mr. Doherty was a Pay Grade 17, which was a non-union position. (Complaint ¶ 11). He reported directly to Chief Renard, the Chief of the Bureau of Community Corrections. (Doherty p. 35). His duties consisted of internal investigations and development of policy and procedure at the bureau level. (Doherty p. 35). He also continued to serve as the coordinator of radio communications for the entire department. (Doherty p. 34). His office was at the Department's headquarters about 20 steps from the Commissioner's door. (Doherty p. 35).

On June 7, 2002, Mr. Doherty received notice from the Chief of the Bureau of Community Corrections of the Department of Corrections, Defendant Noreen Renard, that he was being investigated for alleged inappropriate supervision and contact with an offender. (Complaint ¶ 12). Mr. Doherty contacted the Director of the Internal Affairs Unit, Defendant James Lupinetti, who directed Mr. Doherty to report on June 10, 2002 to be interrogated. (Complaint ¶ 13). Mr. Doherty asserted that he was required to be given the protections of the Law-Enforcement Officers' Bill of Rights ("LEOBOR").

On June 10, 2002, Mr. Doherty was interrogated by Defendant Lupinetti and Defendant Michael tigue, also an investigator for the Internal Affairs Unit. (Complaint ¶ 13). Mr. Doherty was interrogated at the offices of the DOC Internal Affairs Unit, which is an isolated building in a rural area near Smyrna, Delaware. (Complaint ¶ 13). On August 7, 2002, Mr. Doherty was again interrogated, this time by Defendant Robert I. George, Jr., Warden of the Sussex Community Center. (Complaint ¶ 14). All of these interrogations were in violation of his rights.

4

After learning of Defendant George's report of his investigation, Mr. Doherty retained an attorney, David Anderson. (Doherty p. 13-14). Mr. Anderson filed a motion to suppress evidence, asserting that Mr. Doherty's Due Process and rights under LEOBOR were being violated. (Doherty p. 14).

Mr. Doherty was advised by Defendant Paesani's secretary that there was a hearing scheduled regarding the investigation. (Doherty p. 16). Mr. Doherty contacted Defendant Paesani. (Doherty p. 16). Defendant Paesani falsely told him that he would not need an attorney at the hearing. (Doherty p. 9, 17). Mr. Doherty was aware of his rights under LEOBOR, and that if there is anything more than a reprimand, LEOBOR requires that specific rules and protections would be provided to him. (Doherty p. 17). Based upon Defendant Paesani's representation that his attorney did not need to be present, Mr. Doherty validly assumed was that the only potential discipline was an official reprimand, not termination or a demotion. (Doherty p. 17).

On September 17, 2002, Mr. Doherty was given a summary proceeding, conducted by a biased decision maker, Defendant Joseph Paesani. (Complaint ¶ 15). Defendant Paesani concealed information and documents from Mr. Doherty . (Complaint ¶ 15; Doherty p. 14-15). Mr. Doherty was not able to defend himself at the hearing. (Doherty p. 34). He was not permitted to question people who made fraudulent statements. (Doherty p. 34). He was not permitted to view supervision records that he knew were doctored. He had seen the records prior to their being altered, which alterations occurred after the investigation had been initiated. (Doherty p. 34). On December 16, 2002, as a result of this infected hearing, Mr. Doherty was wrongly found by the DOC to have violated the Delaware Department of Corrections' Code of Conduct. (Complaint ¶ 16). During the entire process, Mr. Doherty made repeated objections

and complaints that he was not being provided Due Process protections, including those under the United States Constitution and LEOBOR. (Complaint ¶ 17). Defendants, however, falsely asserted that they had received a verbal opinion from the Attorney General's Office that Mr. Doherty's position did not afford him the protection of LEOBOR. On June 11, 2003, Defendant's assertion was proved to be false when Deputy Attorney Rosemary K. Killian confirmed to the DOC, in a written opinion, that Mr. Doherty's position required the protections set forth in LEOBOR. (Complaint ¶ 18). The statute clearly gave him protections.

On January 15, 2003, Chief Renard demoted Mr. Doherty from Operations Manager, Grade 17, to Senior Probation and Parole Officer, Grade 13. (Complaint ¶ 17). He received notice in the mail that he was transferred to the Dover District of Probation and Parole, and that he would be answering to the director of Probation of Parole in New Castle. (Doherty p. 36). In 2003, the salary for an individual with a Pay Grade 17 ranged from $47, 822 to $71,732. (Doherty Deposition Ex. 3). In 2005, the salary for a Pay Grade 17 ranges from $49,256 to $73,884. (Doherty Deposition Ex. 3). As a result of the demotion, his salary was frozen. (Doherty p. 4). He lost the potential to move up the scale to a higher salary within the grade and to a higher pay grade as well. (Doherty p. 5). He had previously moved up within the same pay grade. (Doherty p. 5). Mr. Doherty's retirement benefits were adversely affected by the demotion since they are based on the highest three years salary and his salary is frozen. (Doherty p. 4-5).

In addition, Pay Grade 17 is a non-union senior management position, while pay grade 13 is in the bargaining unit and requires him to either join the bargaining unit or pay a service fee of $30 per month. (Doherty p. 19-20).

As a result of the demotion, Mr. Doherty was reassigned to an active line unit. He was

not given necessary training, equipment or protection. (Complaint ¶ 17). As a senior management official, Mr. Doherty had not been required to carry a firearm. Once he was demoted to an active line unit, he was transferred to a very active street unit, involving a lot of escape recoveries, which required him to be armed. (Doherty p. 21). For his protection and the protection of other officers, he needed to be admitted to a training class so that he could be re-certified to carry a firearm. (Doherty p. 20). He put in a request to the director of probation and parole and later met with him. (Doherty p. 19-20). His requests were ignored. (Doherty p. 21). Mr. Doherty was the only one in the unit that did not carry a firearm. (Doherty p. 22). As a result of not being able to carry a firearm, Mr. Doherty was not able to able to obtain overtime since a substantial amount of the overtime available was for escape recoveries. (Doherty p. 21-22). Mr. Doherty is currently assigned as a court liasion officer in the New Castle County Courthouse. (Doherty p. 27). He has to travel to the state courts almost every day, two to three times a day. (Doherty p. 27). He incurs $10-15 per day in parking costs, which are not reimbursed. (Doherty p. 27-28). He has asked for reimbursement, but has never been reimbursed. (Doherty p. 28).

As a result of his demotion, Mr. Doherty now reports to Michael Cocuzza, a Grade 15 probation and parole supervisor. (Doherty p. 28). His demotion has resulted in the destruction of a reputation, which was 38 years in the making. (Doherty p. 34). He essentially no longer has friends in Delaware Probation and Parole because he is isolated from them. (Doherty p. 34). He is the only probation and parole officer in Delaware that works in a maintenance garage. (Doherty p. 34).

## ARGUMENT

**Standard of Review**

Summary judgment is only appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

When deciding this motion summary judgment, this Court evaluates the evidence in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Lifer Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(internal citations omitted).

I. **PLAINTIFF HAS CLEARLY ESTABLISHED THAT HE HAS SUFFERED A PROTECTED PROPERTY INTEREST.**

   A. **PLAINTIFF'S ILLEGAL DEMOTION RESULTED IN A LOSS OF PAY AND OTHER ADVERSE ECONOMIC REPERCUSSIONS.**

      1. **Mr. Doherty is unable to move up along the pay scale detrimentally affecting his current and future salary, and his pension salary.**

In 2003, Mr. Doherty's salary was frozen. (Doherty p. 4). Since then, he has been unable

8

to move up on the pay scale, within his pay grade, to a higher salary as he has done prior to his demotion. (Doherty p. 3 & 5). He therefore has lost the ability to earn about $12,000 more per year and lost the ability to receive the benefit of any future salary increases in the Department. (Doherty Deposition Ex. 3).

In addition, as a result of Mr. Doherty's salary being frozen, his retirement benefits will be harmed and adversely affected since they are based on his highest three years of salary and he cannot increase that salary. (Doherty p. 4-5).

### 2. Mr. Doherty has suffered additional financial loss.

#### a. Mr. Doherty is forced to pay a monthly service fee or dues.

Mr. Doherty's former Pay Grade 17 was a non-union senior management position, while his current pay grade 13 is in the bargaining unit. (Doherty p. 19-20). When Mr. Doherty was demoted to pay grade 13, he was forced to either join the bargaining unit and pay $30 in union dues per month or pay an equivalent service fee. (Doherty p. 19-20). He therefore continues to lose $30 each month.

#### b. Mr. Doherty is forced to incur un-reimbursed, work related parking expenses

In addition, Mr. Doherty is required to pay $10-15 per day for parking at the New Castle County Courthouse. (Doherty p. 27). Mr. Doherty is assigned as court liasion officer and has to travel to the state courts almost every day, two to three times a day. (Doherty p. 27). He incurs $10-15 per day in parking costs, which are not reimbursed. (Doherty p. 27-28). He has asked for reimbursement, but his requests have been ignored. (Doherty p. 28).

### c. Mr. Doherty is unable to obtain over-time pay.

Mr. Doherty was reassigned to an active line unit, without providing him the necessary training, equipment or protection. (Complaint ¶ 17). As senior management, Mr. Doherty did not have to carry a firearm. Once he was demoted, he was transferred to a very active street unit, involving a lot of escape recoveries. (Doherty p. 21). For his protection and the protection of other officers, he needed to be admitted to a training class so that he could be re-certified to carry a firearm. (Doherty p. 20). He put in a request to the director of probation and parole and later met with him. (Doherty p. 19-20). His requests were ignored. (Doherty p. 21). Mr. Doherty was the only one in the unit that did not carry a firearm. (Doherty p. 22). As a result of not being able to carry a firearm, Mr. Doherty was not able to able to obtain overtime since a substantial amount of the overtime available was for escape recoveries, which requires a firearm. (Doherty p. 21-22).

## B. IN ADDITION TO HIS FINANCIAL LOSSES, PLAINTIFF HAS LOST OTHER PROTECTED PROPERTY RIGHTS.

The Third Circuit Court of Appeals has held that the loss of salary is not the only property interest in employment that is protected. In Homar v. Gilbert, 89 F.3d 1009 (3d Cir. 1995) overruled on other grounds, Gilbert v. Homar, 520 U.S. 924 (1997), the plaintiff was a police officer at East Stroudsburg University, who as a result of being arrested on drug charges, was suspended and then demoted to a groundskeeper. See id. at 1011. The Third Circuit stated that

> [w]hile a salary is probably the most obvious property interest in employment, we think there are clearly other interests involved. In Homar's case they would include his interest in participating in the daily affairs of the ESU community as a police officer, along with his interest in the honor and respect that accompanies the post."

>See id. at 1018, fn. 7. [emphasis added].

In overruling the decision of the Third Circuit, the United States Supreme Court specifically stated that it was not addressing the issue of whether the protections of the Due Process Clause extend to discipline of public employees short of termination. See Homar, 520 U.S. at 929. This Court is required to follow the precedent of the Third Circuit that salary and benefits are not the only protected property interests.

In early 1997, prior to Homar being overruled on other grounds by the United States Supreme Court, Judge T. Henley Graves, now Resident Judge, of the Delaware Superior Court followed the Third Circuit's holding in Homar. See Barber v. City of Lewes, 1997 Del. Super. LEXIS 73 (Del. Super. 1997). In Barber, Judge Graves explicitly rejected the contention that continuation of public employment and benefits bared a due process claim. See id. at *29.

Contrary to Defendants' assertion, Mr. Doherty's demotion was not "a simple reassignment of duties." (Opening Brief at 12). Until his demotion in January 2003, Mr. Doherty was Operations Manger for the Bureau of Community Corrections. (Doherty p. 4). He reported directly to Chief Renard, the Chief of the Bureau of Community Corrections. (Doherty p. 35). His duties consisted of internal investigations and developing policy and procedure at the bureau level. (Doherty p. 35). He also continued to serve as the coordinator of radio communications for the entire department. (Doherty p. 34). His office was at headquarters about 20 steps from the Commissioner's door. (Doherty p. 35).

Mr. Doherty now reports to Michael Cocuzza, a Grade 15 probation and parole supervisor. (Doherty p. 28). His demotion has resulted in the destruction of a reputation, which has been 38 years in the making. (Doherty p. 34). He essentially no longer has friends in

11

Delaware Probation and Parole because he is isolated from them. (Doherty p. 34). He is the only probation and parole officer in the state of Delaware that works in a maintenance garage. (Doherty p. 34).

## II.   THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY SINCE THEY WERE AWARE THAT THEY WERE VIOLATING A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF MR. DOHERTY

Defendants argue that they were unaware that their actions violated a clearly established constitutional right. (Opening Brief at 14). Defendants, however, fail to recognize the Third Circuit's precedent in Homar v. Gilbert, 89 F.3d 1009 (3d Cir. 1995), and the Delaware Superior Court's decision in Barber v. City of Lewes, 1997 Del. Super. LEXIS 73 (Del. Super. 1997).

In addition, during the entire process, Mr. Doherty and his attorney made repeated objections and complaints that he was not being provided Due Process protections, including those under the United States Constitution and LEOBOR. (Complaint ¶ 17). Defendants, however, falsely asserted that they had received a verbal opinion from the Attorney General's Office that Mr. Doherty's position did not afford him those protections. On June 11, 2003, Defendant's assertion was proved to be false when Deputy Attorney Rosemary K. Killian confirmed to the DOC, in a written opinion, that Mr. Doherty's position required the protections set forth in LEOBOR. (Complaint ¶ 18).

Defendants also argue that a reasonable administrator could believe their conduct was lawful since plaintiff agreed to the discipline. (Opening Brief at 11-12). The "agreement" however was an ultimatum, and as a codicil to the agreement, Mr. Doherty wrote

> By executing this agreement I make no waiver, expressed or implied of any right or claim at law beyond the exact language of this document. I continue to insist that this disciplinary action is unlawful. (Deposition Ex. 2).

Defendants cannot claim ignorance given the clear language of LEOBOR, the clear

judicial mandate and the assertions by Mr. Doherty and his attorney that Defendants were violating his constitutional and statutory rights.

## CONCLUSION

For the reasons stated above, and the facts and authorities that support those reasons, Plaintiff respectfully requests that Defendants' Motion for Summary Judgement be denied.

**RICHARD R. WIER, JR., P.A.**


　/s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Daniel W. Scialpi (#4146)
1220 Market St., Suite 600
Wilmington, DE 19801
(302)888-3222

## CERTIFICATE OF SERVICE

I certify that on this 19th day of August, 2005, that I electronically filed the attached Answering Brief with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Marc P. Niedzielski, Esq.
Department of Justice
Carvel State Office Building, 6th Floor
820 North French Street
Wilmington, Delaware 19801

                         **RICHARD R. WIER, JR., P.A.**

                         /s/ Richard R. Wier, Jr.
                         Richard R. Wier, Jr. (#716)
                         Daniel W. Scialpi (#4146)
                         1220 Market St., Suite 600
                         Wilmington, DE 19801
                         (302)888-3222