IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN DOHERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-370-SLR |
| | ) | |
| STATE OF DELAWARE, DEPARTMENT | ) | |
| OF CORRECTION, NOREEN RENARD, | ) | |
| JOSEPH PAESANI, JAMES | ) | |
| LUPINETTI, MICHAEL TIGUE, and | ) | |
| ROBERT I. GEORGE, JR., | ) | |
| | ) | |
| Defendants. | ) | |

---

Richard R. Wier, Jr., Esquire and Daniel W. Scialpi, Esquire of Richard R. Wier, Jr., P.A., Wilmington, Delaware.  Counsel for Plaintiff.

Marc P. Niedzielski, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: March 31 , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

Plaintiff John Doherty ("plaintiff") filed this action against the State of Delaware, Delaware Department of Correction ("DOC"); Noreen Renard ("Renard"), the Chief of the Bureau of Community Corrections of the DOC, in her official and individual capacities; Joseph Paesani ("Paesani"), Deputy Principal Assistant to Chief Renard, in his official and individual capacities; Internal Affairs officers James Lupinetti ("Lupinetti") and Michael Tigue ("Tigue"), in their official and individual capacities; and Robert I. George ("George"), Warden of the Sussex Community Corrections Center, in his official and individual capacities (collectively "defendants").  Plaintiff had originally filed his complaint for violations of 42 U.S.C. §§ 1983 and 1985, 11 Del. Code §§ 9200 et seq., the Fourteenth Amendment of the United States Constitution, and Delaware common law.  (D.I. 1)  However, in a memorandum opinion issued on March 30, 2005, the court granted summary judgment for the defendants on plaintiff's 42 U.S.C. § 1985 claim based on his inability to allege race or class discrimination.  (D.I. 15)  Due to Eleventh Amendment sovereign immunity, the court also granted summary judgment for the defendants on plaintiff's 42 U.S.C. § 1983 ("§ 1983") claim against defendants in their official capacities. (Id.)  Furthermore, the court noted that the record needed to be supplemented to the extent that plaintiff was suing defendants in

their individual capacities.  (Id.)  In particular, the court left the following issue open for additional discovery:  whether plaintiff continues to receive the same pay and benefits after his demotion as he had received in his former position.[1]  (Id.) The court concluded that it would not entertain the state law claims "until it was determined, through discovery, whether plaintiff has a protectible property interest under the Fourteenth Amendment."  (Id.)  Currently before the court is defendants' motion for summary judgment.  (D.I. 19)  The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## II.    BACKGROUND

Plaintiff's complaint arises out of an investigation performed by defendants into alleged inappropriate conduct by plaintiff.  Plaintiff was accused of having protected a probation officer who was involved in an inappropriate living arrangement with one of the probationers he was supervising.  (D.I. 22 at 4) Until his demotion in January of 2003, plaintiff was Operations Manager for the Bureau of Community Corrections in the DOC. (Id.)  In his former position, plaintiff was classified under Pay

---

[1]In its March 30, 2005 memorandum opinion, the court noted that plaintiff cannot claim a constitutionally protected interest in a more fair investigatory process in the absence of proving that he had a legitimate claim to a substantive interest.  (D.I. 15 at 10, n.3)  Here, plaintiff must prove such a due process protection with respect to his demotion.

Grade 17 and his duties consisted of internal investigation and development of policy and procedure. (Id.) On June 7, 2002, plaintiff received a notice from defendant Renard stating that he was being investigated for inappropriate supervision and contact with an offender. (Id.) After contacting defendant Lupinetti, director of the Internal Affairs Unit, plaintiff was told to report for interrogation on June 10, 2002. (Id.) At that time, he was interrogated by defendants Lupinetti and Tigue. On August 7, 2002, plaintiff was again interrogated, this time by defendant George, the Warden of the Sussex Community Center. (Id.) George wrote up an 11-page investigative report on the evidence and sent a copy to plaintiff. (D.I. 20 at 6)

In September 2002, plaintiff was subject to a fact-finding hearing before defendant Paesani. (D.I. 1 at ¶ 15; D.I. 20 at 6-7) Although plaintiff was represented by counsel, plaintiff claims that he was told by Paesani that counsel would not be required at this hearing. (D.I. 22 at 5) Paesani recommended that plaintiff be terminated.² (D.I. 20 at 7) On December 16, 2002, plaintiff was found to have violated Sections 15 and 23 of the DOC Code of Conduct. (D.I. 1, ¶ 16) On January 15, 2003, Renard demoted plaintiff from his Operations Manager, Pay Grade 17 position to Senior Probation and Parole Officer, Pay Grade

---

²The other officer involved in this alleged misconduct was dismissed for his behavior. (D.I. 20)

3

13.[3]  (D.I. 1, ¶ 17; D.I. 22 at 6)  This demotion led to plaintiff's salary being frozen, where it was locked at a single rate.  (Id.)  On January 27, 2003, plaintiff filed a Step 1 Grievance, a procedure available to him to contest this punishment, and requested a pre-decision hearing.  (D.I. 20 at 7) On February 20, 2003, plaintiff reached an agreement with his employer concerning the disciplinary matter.  (Id.)  Plaintiff agreed that he would be demoted from Pay Grade 17 to Pay Grade 13, but that his salary would remain the same, a written reprimand would be placed in his file but would be removed upon his retirement, and he would be transferred to a new position. (D.I. 20, ex. 8)

Subsequent to his demotion, plaintiff avers that certain financial consequences first became apparent.  (D.I. 20, ex. 1 at 20:11-22:5; D.I. 22 at 6-7)  Initially, plaintiff claims that his demotion adversely affected his retirement benefits.  (D.I. 20 at 6)  Retirement benefits for parole and probation officers are calculated by considering the highest three years of salary for an officer.  (D.I. 22 at 6)  It is plaintiff's contention that because his salary rate is frozen, there will be no increases in salary and, thus, his retirement benefits will never increase.

---

[3]There is a factual inconsistency between the allegations of plaintiff and defendants.  Plaintiff claims to have been involuntarily demoted to Grade 13 on January 15, 2003.  (D.I. 22) However, defendants claim that plaintiff was demoted based on an agreement dated February 20, 2003.  (D.I. 20, Ex. 5)

4

(Id.)  Another loss claimed by plaintiff is that his former position at Grade 17 was a senior management position, whereas his Grade 13 position is a union position and part of the bargaining unit.  Membership in this unit requires him to pay a fee that was originally $20.00 per month, but has been raised to $30.00 per month, in order to work without being a member of the union.⁴  (D.I. 20, ex. 1 at 19:13-20:1)  Furthermore, plaintiff claims that he was reassigned to an active line unit where it is necessary to carry a firearm, something for which he had allowed his certification to lapse.  (D.I. 22 at 7)  Plaintiff has not retrained or been recertified; he avers in this regard that he is unable to get assignments which pay overtime in his new position because they involve recapturing escaped convicts while carrying a firearm.  (Id.)  Plaintiff further alleges that his current employment assignment as a court liaison officer in the New Castle County Courthouse requires him to pay 10 to 15 dollars in parking costs per day.  (Id.)  Finally, plaintiff claims losses of a non-monetary nature including the loss of the esteem and respect which had developed over 38 years as an officer having access to various superiors in the DOC.  (Id.)  In sum, plaintiff asserts that he has been deprived of several protected property

---

⁴Plaintiff has not explained what the benefits and detriments are, both economic and non-economic, to joining the union.  Plaintiff has simply stated that this is an added expense, yet makes no reference as to why he chose not to join the union or if his membership in the union is even possible.

5

interests in violation of the procedural due process protections
of the Fourteenth Amendment and § 1983.

Defendants, however, assert that plaintiff is actually
saving money in his new position. (D.I. 23 at 7-8) Defendants
claim that plaintiff does not have to drive from Dover to
Wilmington every day, so that he saves a substantial amount of
money in gas expenses, tolls and wear and tear on his vehicle.
(Id.) Additionally, defendants assert that plaintiff has not
reapplied for firearms training and has not attempted to get
reimbursement for his parking expenses. (Id.)

## III.  STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P. 56
(c). The moving party bears the burden of proving that no
genuine issue of material fact exists. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct." Horowitz v. Fed. Kemper
Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal

6

citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV.  DISCUSSION

In their brief in support of their motion for summary judgment, defendants make two arguments.  (D.I. 20)  First, defendants assert that "[p]laintiff has not suffered a property loss that could support a claim under the due process clause of the Fourteenth Amendment."  (Id. at 5, 9-12)  Secondly, defendants assert that "[t]he remaining defendants sued in their

7

individual capacities are entitled to qualified immunity even if
there was evidence of a constitutional violation." (Id. at 5,
13-14)

## A. Protected Property Interest

All of plaintiff's federal claims rest on his assertion that
he was deprived of various property interests associated with his
employment without the procedural due process required by the
Fourteenth Amendment. The primary issue now before the court is
whether plaintiff's interest in his former position amounts to a
protected property interest within the purview of the Fourteenth
Amendment. A due process claim consists of three elements: (1)
defendants must deprive plaintiff of an interest protected by
law; (2) that deprivation must be the result of some governmental
action; and (3) the deprivation must be without due process. See
Cospito v. Heckler, 742 F.2d 72, 80 (3d Cir. 1984). As to the
first element, this court has recognized that "a plaintiff must
demonstrate that he or she was deprived of a life, liberty or
property interest." See Cunningham v. Becker, 96 F. Supp 2d.
369, 374 (D. Del. 2000). As the United States Supreme Court has
recognized, "To have a property interest in a benefit, a person
clearly must have more than an abstract need or desire for it.
He must have more than a unilateral expectation of it. He must,
instead, have a legitimate claim of entitlement to it." Board of
Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); see

8

also <u>Acierno v. New Castle County</u>, 1995 WL 704976 (D. Del. 1995).
"Property interests, of course, are not created by the
Constitution.  Rather they are created and their dimensions are
defined by existing rules or understandings that stem from an
independent source such as state law - rules or understandings
that secure certain benefits and that support claims of
entitlement to those benefits."  <u>Roth</u>, 408 U.S. at 577.
Legitimate claims of entitlement to "property" are not created by
the Constitution; rather, they are created by state laws that
"secure certain benefits and that support claims of entitlement
to those benefits."  <u>Id.</u>; <u>see also</u> <u>Bishop v. Wood</u>, 426 U.S. 341,
344 (1976).

     If it is determined that a public employee has a protected
property interest in his employment, then the public employee is
entitled to a pre-termination hearing.  The hearing must be "an
initial check against mistaken decisions - essentially, a
determination of whether there are reasonable grounds to believe
that the charges against the employee are true and support the
proposed action."  <u>See</u> <u>Cleveland Bd. of Education v. Loudermill</u>,
470 U.S. 532, 545-46 (1985); <u>see</u> <u>also</u> <u>Homar v. Gilbert</u>, 89 F.3d
1009 (3d Cir. 1995), overruled on other grounds by <u>Gilbert v.</u>
<u>Homar</u>, 520 U.S. 924 (1997).

     Traditionally, protected property interest claims have been
reserved for those who have been terminated from employment to

                              9

which they had legitimate entitlement. See Roth, 408 U.S. at
575-77; see also Perry v. Sindermann, 408 U.S. 593, 595 (1972);
Unger v. National Residents Matching Program, 928 F.2d 1392, 1397
(3d Cir. 1991). Here, plaintiff has not been terminated from
employment. Plaintiff still maintains a job with the DOC and
continues to draw the same salary as before his demotion,
although allegedly in a less prestigious position than he had
previously held. Nevertheless, he still claims that there is a
protected property interest implicit in maintaining his former
job as Operations Manager for the Bureau of Community
Corrections.

Plaintiff's claim specifically raises the issue of whether a
protected property interest is at stake when action short of
termination is taken against a public employee. The Third
Circuit has declined to hold that termination of employment is
necessary for a due process violation. See, e.g., Ferraro v.
City of Long Branch, 23 F.3d 803, 807 (3d Cir. 1994). The issue
was addressed briefly by the Third Circuit in Homar v. Gilbert,
89 F.3d 1009 (3d Cir. 1995), overruled on other grounds by
Gilbert v. Homar, 520 U.S. 924 (1997).[5] The plaintiff in Homar

_____

[5]In overruling the decision of the Third Circuit, the United
States Supreme Court specifically stated:

    Although we have previously held that public employees
    who can be discharged only for cause have a
    constitutionally protected property interest in their
    tenure and cannot be fired without due process, we have

was an East Stroudsburg University police officer who was

discovered in a drug dealer's home after a police raid.  East

Stroudsburg University officials suspended him without pay until

a more thorough investigation could be completed.  Although the

charges were dismissed, plaintiff admitted to buying drugs for

his own personal use and the University subsequently demoted him

to groundskeeper with a reduction in pay.  Before deciding the

case on other grounds, the Third Circuit observed, "While we

recognize that Homar was not completely terminated from his

employment with ESU, he was terminated from his position as a

police officer and received a reduction in his pay.  Accordingly,

we find the requirements of Loudermill to be applicable in this

instance."  Homar, 89 F.3d at 1014.  In addition to reasoning

that an employee need not be terminated in order to be deprived

of a protected property interest, the Third Circuit indicated

that economic benefits of employment are not the only interests

subject to protection.[6]  Id. at 1014-15.  One of the few courts

_____

not had occasion to decide whether the protections of
the Due Process Clause extend to discipline of tenured
public employees short of termination.

520 U.S. at 928-929 (internal citations omitted).

[6]The court stated, "While a salary is probably the most
obvious property interest in employment, we think there are
clearly other interests involved.  In Homar's case they would
include his interest in participating in the daily affairs of the
ESU community as a police officer, along with his interest in the
honor and respect that accompanies the post."  Homar, 89 F.3d at
1018, n.7.

11

to interpret <u>Homar</u> has also indicated that intangible benefits

such as honor and respect could be subject to protection.[7]  In

<u>Barber v. City of Lewes</u>, 1997 WL 127951 (Del. Super. Jan. 31,

1997), the plaintiff was a chief of police accused of

incompetence by another city official with respect to his job

performance.  As a result, his scheduling and disciplinary powers

were taken from him.  He was eventually demoted to his previous

---

[7]Several courts of other circuits have addressed the issue
of whether there must be an economic loss associated with a
demotion or whether intangible benefits alone can amount to a
protected property interest and have concluded that economic
benefits are the predominant factor.  <u>See, e.g.</u> <u>Jett v. Dallas
Independent School Dist.</u>, 798 F.2d 748 (5th Cir. 1986).  In <u>Jett</u>,
the plaintiff was a football coach and teacher at a school of
defendant school district.  After incidents during a football
game and frequent disagreements with the new principal, the
school transferred him to a non-coaching teaching position at
another school.  Plaintiff then quit and filed suit.  The
threshold issue for the court was whether plaintiff's transfer
amounted to the deprivation of a protected property interest due
to his loss of coaching responsibilities.   The court pointed out
that Jett had no entitlement based on contract or with respect to
his employer's actions regarding the intangible benefits of being
a coach.  <u>See also</u> <u>Royster v. Board of Trustees</u>, 774 F.2d 618
(4th Cir. 1998), where the Fourth Circuit concluded that a
demotion while still being paid did not impact a protected
property interest.  There, plaintiff was a superintendent of
schools who was employed pursuant to a series of multi-year
contracts.  Plaintiff was removed from the superintendent
position in the middle of a contract term without reasoning from
the school board.  From the time plaintiff was removed until the
end of his contract, the plaintiff was paid according to his
contracted rate.  The court stated, "Indeed to hold that Royster
had a constitutionally protected property interest in continuing
to perform his services would make it impossible for a public
employer, dissatisfied with an employee's performance, but
without specific contractual cause to discharge him, to relieve
the employee from his duties, although willing to compensate the
employee in full."  <u>Id.</u> at 621.

position of corporal and subsequently brought suit claiming a
protected property interest in his former job as chief of police.
The court, referencing Homar in analyzing the potential protected
property interests of the plaintiff, stated, "If the Third
Circuit recognizes the honor and respect that accompanies a
university police officer's position, then it follows that
Plaintiff has an even more compelling argument that his property
interest in his position as Chief of Police covers more than only
his salary and benefits." Id. at *11.

    In the case at bar, plaintiff has asserted the loss of
retirement benefits, union fees and possible overtime wages.
(D.I. 22 at 8-12) Additionally, plaintiff has claimed a loss of
many non-economic benefits, including honor and esteem from his
38-year career. (Id.) Plaintiff's situation is somewhat
distinct from that of the demoted security guard who was the
plaintiff in Homar. Here, plaintiff has not received a reduction
in salary based on his demotion. However, plaintiff claims that
the "freeze" on his salary will adversely effect his retirement
benefits. (D.I. 22 at 8-9) It is not clear from the record
whether plaintiff's demotion will affect his benefits.[8] Thus, a

_____

[8]While plaintiff claims in his brief that he "has lost the
ability to earn about $12,000 more per year and lost the ability
to receive the benefit of any future salary increases in the
Department" (D.I. 22 at 9), he indicated in his deposition that
his actual salary remains the same as when he was a Grade 17 and
that he would be entitled to receive any state increases in
salary. (D.I. 20, ex. 1 at 4:15-20) In addition, the agreement

13

genuine issue of material fact remains as to this issue.

With respect to plaintiff's allegations of non-monetary losses, they are somewhat distinguishable from the allegations of the plaintiff in Barber, but still appear to evidence legitimate losses. Here, although plaintiff admitted that he had engaged in improper professional conduct and signed an agreement acknowledging his conduct and demotion, he still maintained that the disciplinary action against him by defendants was unlawful. (D.I. 20, ex. 7)  In contrast, the plaintiff in Barber was demoted to the position of corporal by his superiors against his will and despite protests that he was properly performing his job.  In the case at bar, while defendants argue that plaintiff entered into an agreement to formally accept his new position in lieu of other punishment from his superiors and thereby gave up the honor and esteem of his former position by his own volition, this assertion is contradicted by plaintiff's indication on that agreement that he "continue[s] to insist that this disciplinary action is unlawful."  (D.I. 20 at 7, 11-12, ex. 8)  Thus, while defendants assert that plaintiff acquiesced to his non-monetary losses, they do not refute that such losses occurred.  Therefore, defendants' motion for summary judgment shall be denied with

---

entered into by plaintiff and the DOC indicated that "there will be no change in rate of pay" and that plaintiff "will retain [his] current salary."  (D.I., ex. 8)  In light of this evidence, the precise scope of plaintiff's financial losses, if any, as a result of his demotion is unclear.

14

respect to this issue.

### B.  Qualified Immunity

Defendants argue that they are "entitled to qualified immunity from any damages as plaintiff cannot establish a constitution violation that was clearly established and under the circumstances the defendants' conduct was entirely reasonable." (D.I. 20 at 13)  Government officials performing discretionary functions are immune from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); accord In re City of Phila. Litig., 49 F.3d 945, 961 (3d Cir. 1995).

When analyzing a qualified immunity defense, the court must first ascertain "whether plaintiff has [alleged] a violation of a constitutional right at all."  Larsen v. Senate of the Commonwealth of Pa., 154 F.3d 82, 86 (3d Cir. 1998).  Next, the court must inquire whether the right was "'clearly established' at the time the defendants acted."  In re City of Phila. Litig., 49 F.3d at 961 (quoting Acierno v. Cloutier, 40 F.3d 597, 606 (3d Cir. 1994)).  Finally, the court must determine whether "'a

15

reasonable person in the official's position would have known that his conduct would violate that right.'" Open Inns, Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp.2d 410, 419 (E.D. Pa. 1998) (quoting Wilkinson v. Bensalem Township, 822 F. Supp. 1154, 1157 (E.D. Pa. 1993) (citations omitted)). If on an objective basis "'it is obvious that no reasonably competent [official] would have concluded that [the actions were lawful],'" defendants are not immune from suit; however, "'if [officials] of reasonable competence could disagree on this issue, immunity should be recognized.'" In re City of Phila. Litig., 49 F.3d at 961-62 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In their motion for summary judgment, defendants rely almost exclusively on their contention that plaintiff has failed to assert a constitutional violation. (D.I. 20 at 13-14; D.I. 23 at 10) Aside from that reliance, defendants offer general contentions and very little analysis as to their assertion of qualified immunity. (Id.) For example, defendants: (1) fail to specify the conduct for which they assert qualified immunity; (2) establish no distinction among the positions of the individual defendants; and (3) offer no evidence as to what conduct would be reasonable for an individual in the position of any of the defendants. With respect to the first element of the qualified immunity analysis, plaintiff has alleged a violation of a constitutional right. As noted above, plaintiff has alleged the

violation of a protected property interest under the Fourteenth
Amendment. This is enough to force defendants to resort to the
following two elements of the qualified immunity analysis.
However, the next two elements of the qualified immunity analysis
cannot be met by defendants' unfocused arguments. Thus, the
court must deny defendants' motion for summary judgment of
qualified immunity.

Defendants' motion for summary judgment shall be denied with
respect to plaintiff's Fourteenth Amendment due process claim and
plaintiff's § 1983 claim against defendants in their individual
capacities. Defendants' motion for summary judgment of qualified
immunity of defendants shall also be denied.

## V. CONCLUSION

For the reasons stated above, the court denies defendants'
motion for summary judgment that plaintiff cannot support a claim
under the due process clause of the Fourteenth Amendment. The
court also denies defendants' motion for summary judgment with
respect to defendants' assertion of qualified immunity. An
appropriate order shall issue.

17